UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


ESTHER WILSON,

      Petitioner,

v.                                                        Case No. 5:17cv301-MCR-HTC


MARK S. INCH,[1]

      Respondent.

_____/

## ORDER AND REPORT AND RECOMMENDATION

This matter is before the Court on Petitioner Esther Wilson's ("Wilson") petition for writ of habeas corpus under 28 U.S.C. § 2254. ECF Doc. 1. The matter was referred to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the Petition, the State's response with exhibits (ECF Doc. 14), and Wilson's reply (ECF Doc. 21), the undersigned recommends the petition be **DENIED** without an evidentiary hearing.

---

[1] Mark S. Inch succeeded Julie Jones as Secretary of the Florida Department of Corrections and is automatically substituted as the respondent. *See* Fed. R. Civ. P. 25(d). The clerk is directed to update the case file information to reflect Mark S. Inch as the Respondent.

Wilson's petition is premised on two grounds of ineffectiveness of trial counsel ("IATC"). First, Wilson claims trial counsel was ineffective in advising her to reject a plea offer from the state. Second, she claims trial counsel was ineffective for failing to call the victim as a witness at trial. ECF Doc. 1. For the reasons set forth below, the undersigned finds that the state court's adjudication of these claims was neither contrary to clearly established federal law nor based on an unreasonable application of the facts to the law. *See* 28 U.S.C. § 2254(d).

## I.    Factual and Procedural Background

Wilson was charged in an Amended Information on March 11, 2013 with one count of Aggravated Battery with a Deadly Weapon (Firearm) Causing Great Bodily Harm for shooting her then fiancé, Walter Wright, in the face at point blank range, after a day of drinking and during an argument. ECF Doc. 14-1 at 85. Wilson claims the shooting was an accident and maintained from the beginning that Wright would testify the shooting was an accident.

Although Wright had been subpoenaed by the State to testify at trial and was present, the State released him from his subpoena the day of trial. Wright left the courthouse without testifying. Wilson chose not to testify and, although the defense deposed ten (10) witnesses, none were called to testify at trial. ECF Doc. 14-4 at 50. Wright, however, did make a statement during Wilson's sentencing hearing, which will be discussed more below and is the basis of Ground Two of Wilson's petition.

A jury convicted Wilson, and the trial judge sentenced her to the mandatory minimum of twenty-five years' imprisonment. ECF Doc. 14-1 at 239. She filed a direct appeal to the First District Court of Appeal ("First DCA") on April 29, 2013. ECF Doc. 14-1 at 264. The First DCA issued a *per curiam* opinion affirming the judgment and sentence without written opinion on March 13, 2014. ECF Doc. 14-3 at 50. Wilson moved for rehearing, which was denied on April 24, 2014. ECF Doc. 14-3 at 52. The conviction became final July 23, 2014, ninety (90) days after the date of the First DCA order denying rehearing, when the time for seeking Supreme Court review expired. *Chavers v. Sec'y, Fla. Dep't of Corr.*, 468 F.3d 1273, 1275 (11th Cir. 2006) ("entry of judgment, and not the issuance of the mandate, is the event that starts the running of time for seeking Supreme Court review, within the meaning of Supreme Court Rule 13.3 and 28 U.S.C. § 2244(d)(1)(A).").

Ninety-nine (99) days after Wilson's judgment became final, she filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 on October 30, 2014. ECF Doc. 14-3 at 68. The state court held an evidentiary hearing on October 8, 2015 (ECF Doc. 14-4 at 18) and denied the motion on November 4, 2015. ECF Doc. 14-4 at 4. Wilson appealed the state's court's denial to the First DCA on December 2, 2015, ECF Doc. 14-4 at 8, and the First DCA affirmed *per curiam* and without written opinion on March 1, 2017. ECF Doc. 14-5 at 2. Wilson filed a Motion for Rehearing and for Issuance of a Detailed Written Opinion, which

the First DCA denied on April 5, 2017.  ECF Doc. 14-5 at 8.  The mandate was issued June 15, 2017.  The instant federal petition was delivered to Lowell Correctional Institution mail officials on December 2, 2017, and thus, is timely filed.[2]  ECF Doc. 1 at 15.

## II.    Legal Standards

### A.    Federal review of state court decision

Under the standard of review for a § 2254 motion, this Court is precluded from granting habeas relief unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

The United States Supreme Court set forth the framework for a § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).  *See id.*, at 412-13 (O'Connor, J., concurring).  Under the *Williams* framework, a federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its

---

[2] Between June 15, 2017 and December 2, 2017, 170 days passed, which, when added to the 99 days of untolled time, comes to 269 untolled days.  *See King v. Sec'y, Fla. Dept. of Corr.*, 2017 WL 6760186, *1 (11th Cir. Jan. 5, 2017) (holding federal one-year period is tolled upon properly filed postconviction motion and remains tolled until the appellate court issues its mandate).

decision." *See Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *See Thaler v. Haynes*, 559 U.S. 43, 47 (2010). Once the governing legal principle is identified, the federal court must determine whether the state court's adjudication is "contrary to" the identified governing legal principle or the state court "unreasonably applie[d] that principle to the facts of the case." *See Williams*, 529 U.S. at 412-13 (O'Connor, J., concurring). Even if a federal court concludes the state court applied federal law incorrectly, habeas relief is appropriate only if that application was "objectively unreasonable." *See Maharaj v. Sec'y Dep't of Corr.*, 432 F.3d 1292, 1308 (11th Cir. 2005).

B.    **Standards for an Ineffective Assistance of Counsel Claim**

A claim of ineffective assistance of counsel requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984). The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential. *Id.* at 689.

III.    **Application to Wilson's Petition**

Because the First District issued a *per curiam* affirmance of the denial of Wilson's Rule 3.850 Motion, this Court will "look through" that decision to the last related state-court decision that provides a relevant rationale and presume that the unexplained decision adopted the same reasoning. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). Here, that last decision comes from the Order Denying Motion for Post-Conviction Relief. Ex. J, p. 49-52; ECF Doc. 14-4 at 4-7.

A.    **Ground One: IATC for Advising Wilson not to Accept a Plea**

Wilson argues trial counsel "dissuaded [her] from accepting the State's offer to resolve her case by entering a plea in exchange for four years of incarceration," by telling her "that the victim would testify at trial that the shooting was an accident, and that the victim's testimony would lead to an acquittal." ECF Doc. 1 at 5. She contends "[h]ad Counsel not affirmatively promised Defendant that she would be acquitted by a jury, she would have accepted the State's offer and received a sentence of four years of incarceration." *Id.* As will be discussed below, although Wilson references a 4-year plea deal, her counsel testified that the initial plea offer was for four (4) years, but then was amended to five (5) years.

A defendant's Sixth Amendment right to counsel "extends to the plea-bargaining process." *Lafler v. Cooper*, 566 U.S. 156, 162 (2012) (citing *Missouri v. Frye*, 566 U.S. 133, 138 (2012), and *McMann v. Richardson*, 397 U.S. 759, 771

(1970)).  "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." *Lafler*, 566 U.S. at 168. Thus, the two-part test articulated in *Strickland* applies to claims that counsel was ineffective during plea negotiations. *See id.* at 163 (applying *Strickland*'s two-part test to federal habeas petitioner's claim that counsel was ineffective for advising him to reject a plea offer).

In the context of a rejected plea offer, a petitioner must show that "but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id*. at 163-64.

Wilson and her appointed counsel, Brian Hill, testified at the evidentiary hearing.  According to Hill, who used his file notes to refresh his memory, the initial plea offer of four (4) years came "early in the case on August 29, 2012," prior to depositions being taken.  ECF Doc. 14-4 at 51.  He met with Wilson to discuss the plea and did not make a recommendation at that time that Wilson take the plea. EECF Doc. 14-4 at 51.  He further testified he never promised Wilson she was going to be found not guilty and that it was her decision to refuse the offer. *Id.*

On February 19, 2013, after Wright and other witnesses had been deposed, Hill met with Wilson again for "trial preparation."[3]  ECF Doc. 14-4 at 53.  By that time, the state had amended the plea to five (5) years.  Hill discussed the plea offer with Wright during the February meeting and testified, "I told her that the risk of going to trial in this case were too great for her to take and that she needed, and by that time the offer had been amended to five years DOC.  I told her the risks were too great in a case like this for her, to go to trial, that it was like a gamble and my recommendation was that she take that five-year plea offer."  Ex. K at 37; ECF Doc. 14-4 at 54.  This conversation occurred about a month from the trial.

According to Hill, because this was a trial preparation meeting, he also discussed with Wilson the statements the witnesses had made, including statements from Wright.  ECF Doc. 14-4 at 55-56, 59.  Hill could not recall specifically giving Wilson a copy of Wright's transcript (ECF Doc. 14-4 at 60), playing it for her (ECF Doc. 14-4 at 72), or discussing everything Wright said with Hill (ECF Doc. 14-4 at 58).  He further could not recall if the reference to witness statements in his notes was a reference to Wright's deposition or statement to the police.  ECF Doc. 14-4 at 60.  However, Hill testified that he is "quite confident that [he] would have told [Wilson] that Mr. Wright is not testifying that this was an accident."  ECF Doc. 14-

---

[3] According to Hill's notes, he me with Wilson face-to-face at least 4 times after his representation commenced and before trial to discuss the facts of the case.  ECF Doc. 14-4 at 49.

4 at 61.  He also testified that he would have discussed "all the statements" that he had with Wilson.  ECF Doc. 14-4 at 65.  When crossed about why he did not have more detail in his notes about discussing Wright's deposition testimony with Wilson, Hill stated, "I'm just telling you I didn't make a specific notation of it in my notes but my belief is that's when we should have been going over all of the evidence that was going to be presented in the trial."  ECF Doc. 14-4 at 72.

Wilson also testified at the Rule 3.850 evidentiary hearing.  According to Wilson, prior to being advised of a plea, she and Hill had discussed the fact that Wilson was going "to get off because it was an accident."  ECF Doc. 14-4 at 26. Wilson explained that she told Hill that the shooting was an accident (and Hill does not dispute that this was the defense's focus from the beginning).  She was sure Wright would testify the shooting "was an accident" because she had been secretly communicating with Wright leading up to the trial despite a no-contact order.  ECF Doc. 14-4 at 26-27.  Wilson further testified that Hill told her if Wright came in and testified, then she would be acquitted.  ECF Doc. 14-4 at 31.  Wilson acknowledged, however, that it was her decision to refuse the plea and testified further that Hill "didn't so much advise me," "he would say, well, it's up to you, it's up to you."  ECF Doc. 14-4 at 41.  Additionally, Wilson testified that neither Hill nor Wright told her Wright had been deposed and, thus, she was not aware of Wright's deposition until after the trial.  ECF Doc. 14-4 at 35-36.  Finally, Wilson testified that having now

read the deposition, had she known about Wright's testimony before, she would have taken the plea. ECF Doc. 14-4 at 38.

The state court denied relief on this IATC claim. The court noted that in her 3.850 motion, Wilson claimed (as she does here) that counsel was ineffective for telling her that she would be acquitted if Wright testified. Yet, at the evidentiary hearing, she "changed her position and argued that Hill never told her Wright had been deposed and had Hill done so, she would have taken the plea." ECF Doc. 1 at 18. The court, however, did not find Wilson's testimony to be credible on that point.

In its order denying relief, the court made the following findings: (1) Hill's testimony that Defendant was adamant from day one that the shooting was an accident was "more credible"; (2) Hill never told Defendant she would be acquitted if Wright testified that the shooting was an accident; (3) Hill told Defendant about the state's evidence, including Wright's deposition testimony that the shooting was not an accident, before the last plea offer was made; and (4) Wilson rejected the 5-year plea against Hill's advice. Ex. J, p. 51; ECF Doc. 14-4 at 6.

Determinations of credibility are best made by the trial court judge, who can assess the demeanor and candor of the witnesses. *Gore v. Secretary for Dept. of Corrections*, 492 F.3d 1273, 1300 (11th Cir. 2007) (noting that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing *Rice v. Collins*, 546 U.S. 333, 341–

42 (2006) ("[r]easonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")); *see also Baldwin v. Johnson*, 152 F.3d 1304, 1317 (11th Cir. 1998) (citing *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) ("Title 28 U.S.C. § 2254(d) gives federal habeas [corpus] courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them.")); *Smith v. Kemp*, 715 F.2d 1459, 1465 (11th Cir. 1983) ("Resolution of conflicts in evidence and credibility issues rests within the province of the state habeas court, provided petitioner has been afforded the opportunity to a full and fair hearing."), *cert. denied*, 464 U.S. 1003 (1983).

Additionally, "[f]actual determinations by state courts are presumed correct absent clear and convincing evidence to the contrary, § 2254(e)(1)." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003); *Parker v. Head*, 244 F.3d 831, 835 (11thCir. 2001). The burden is on the petitioner to rebut that presumption of correctness by clear and convincing evidence. *See id.* at 835-36; 28 U.S.C. § 2254(e)(1).

Wilson has pointed to nothing in the record, much less clear and convincing evidence, which justifies overturning the presumption of correctness given to the state court's factual findings.[4] Although Wilson testified that Hill promised her she

---

[4] Wilson's reply does not address this IATC claim at all and, instead, focuses solely on Ground Two.

would be acquitted if Wright testified, that testimony is disputed by Hill.  The record supports, however, a finding that it was Wilson who was adamant from the beginning that she would be acquitted if Wright testified.  In fact, when Wilson was asked about her response to being offered a 4-year plea, she said, "I said no, I said because I know Walt will come in and say that it was an accident."  ECF Doc. 14-4 at 27.  Similarly, when Wilson was asked whether she had mentioned to Hill the possibility of self-defense as a trial strategy, she said she did not think so because "I was always talking to him about Walt coming in to talk to him, you know, to stand up and say, you know that he, that it was an accident."  ECF Doc. 14-4 at 30.

Wilson's claim that counsel failed to mention Wright's deposition testimony was also rejected as not credible by the state court, and the undersigned finds no basis to overturn that decision.  Although Hill's notes do not reflect a specific discussion with Wilson about Wright's deposition, Hill's notes do specifically reference going over Wright's statements with Hill, and Hill testified that the statement Wright gave to the police was not different from what he said in his deposition.  Importantly, the statement Wright gave to police was that Wilson "pointed a gun at him and she cocked that hammer and it went off."  ECF Doc. 14-4 at 74.  Thus, regardless of whether Hill went over Wright's deposition line by line with Wilson, the record supports a finding that Hill discussed with Wilson the fact that Wright was not saying the shooting was an accident.

Furthermore, the undersigned agrees with the state court that Hill's recommendation not to accept the initial 4-year offer because depositions had not been taken was reasonable and not ineffective. According to Hill, that offer came shortly after the case began and before any depositions were taken, and Wright had consistently maintained that the shooting was an accident. Thus, Hill made a reasonable strategic decision to recommend that Wilson not take the offer at that time. As the Eleventh Circuit stated it *Nance v. Warden, Georgia Diagnostic Prison*, "it is rarer still for merit to be found in a claim that challenges a strategic decision of counsel." *Nance v. Warden, Georgia Diagnostic Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (citing *Strickland v. Washington*, 466 U.S. 668, 690 (1984)).

Accordingly, the undersigned finds that the state court's conclusion that counsel was not ineffective was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d).

### B.    Ground Two: IATC for Failing to Call the Victim as a Witness

Wilson argues that she asked trial counsel to call Wright to testify as a witness at trial because Wright would say the shooting was an accident. Wilson claims counsel's failure to call Wright to testify was deficient performance and prejudicial because at sentencing Wright testified that "from the very beginning I explained to both of the attorneys that the incident was, I feel that it was a[n] accident." ECF

Doc. 1 at 7.  Although Wright did make that statement at Wilson's sentencing hearing, Wright's deposition testimony paints a different picture of the shooting.

In his deposition, Wright testified that after they returned home from a barbeque at his uncle's place, he and Wilson began arguing about text messages from another woman.  ECF Doc. 14-3 at 91-92.  The argument escalated and, eventually, Wright threw a chair against the bedroom door, breaking the mirror behind it, and pushed over a three-and-a-half-foot-tall jewelry armoire in their bedroom.  ECF Doc. 14-3 at 96.  Wright exited the bedroom and told Wilson he was going to go stay with his brother to avoid additional argument.  *Id.*  Wilson came out of the bedroom with the gun, holding it down at her side, pointing it at the ground. *Id.*  Wright took the gun from her and hid it under the front step outside, on his way outside to walk their puppy.  ECF Doc. 14-3 at 97.

Wilson then started yelling for her phone, which Wright claims he did not have, and asked if he threw it behind the couch.  ECF Doc. 14-3 at 98.  At some point, Wilson found her phone, went outside, and told Wright that she was talking to the police and telling them that Wright would not give Wilson back her gun.  *Id.* Wright is a convicted felon and cannot be in possession of a firearm.  ECF Doc. 14-3 at 96.  At that point, Wright reached down the steps, handed Wilson her gun and told Wilson he was going to his brother's.  ECF Doc. 14-3 at 99.  Next, Wright says,

"I heard the gun go click. When I heard the gun go click, and I turned around and she had it pointed at my chest, and I pushed the gun up and boom, you know." *Id.*

The state court denied relief on this IATC claim, finding that Hill "made a wise tactical decision not to call Wright based on his deposition testimony." ECF Doc. 1 at 18. The state court was correct that "counsel's decision to call or not call a witness is "a matter of strategy and is not ineffective unless the petitioner can prove the chosen course, in itself, was unreasonable." *Chandler v. United States*, 218 F.3d 1305, 1318 (11th Cir. 2000). The defendant bears the burden of proving that counsel's performance was unreasonable under prevailing professional norms and that the challenged action was not sound strategy. *Strickland*, 466 U.S. at 688-89. This burden is particularly high when challenging counsel's strategic decision. *Nance*, 922 F.3d at 1302. "It is especially difficult to succeed with an ineffective assistance claim questioning the strategic decisions of trial counsel who were informed of the available evidence." *See Nance*, 922 F.3d at 1302 (citing *Strickland*, 466 U.S. at 690) ("strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable").

The undersigned agrees with the state court that Hill's decision was not unreasonable. As Hill explained, after the state released Wright from his subpoena, Hill decided not to call him because he "felt that it was more beneficial for her to argue that he was a disinterested victim and show the jury we don't even have a

victim here in this case. And that was the approach that I took in this case." ECF Doc. 14-4 15 69. According to Hill, Wright either would have had to testify consistently with his deposition, which would have raised a question as to whether the shooting was accidental and, thus, would be detrimental to Wilson's case, or he would have had to testify inconsistently with his deposition, which would have undermined his credibility to the jury. ECF Doc. 14-4 at 73. Moreover, Hill was familiar with Wright and knew that he was a convicted felon, which would have been another area that the state would have used to impeach Wright had the defense chosen to call Wright. *Id.*

Indeed, at the evidentiary hearing, and after reading Wright's deposition, Wilson agreed that Wright's statements were inconsistent with not only the shooting being an accident but also with Wilson's own recollections about the shooting. ECF Doc. 14-4 at 36, 38. For instance, Wilson said the gun was hidden under the couch, that she picked it up, put it in her right hand and when she turned around Wright was there, causing her to throw her hand up and that is when the gun went off. ECF Doc. 14-4 at 29. It is also telling that despite her constant communications with Wright prior to trial, Wright never told Wilson that he had been deposed. ECF Doc. 14-4 at 35. Furthermore, regardless of whether Wright had been released from the subpoena, he could have stayed, but did not stay, for the trial. ECF Doc. 14-4 at 42. Wilson also admitted at the evidentiary hearing that she and Hill did not discuss

calling Wright to testify during the trial, even though she saw him there.  ECF Doc.

14-4 at 34.  Even at the conclusion of the trial, Wilson did not ask her counsel why

Wright had not been called.  ECF Doc. 14-4 at 35.

Furthermore, although Wright did testify at Wilson's sentencing hearing that

the shooting was an accident (ECF Doc. 14-2 at 23-24), Hill's concern about

Wright's impeachment was also substantiated.  After Wright gave his statement, the

prosecutor told the court that Wright gave two statements to law enforcement, and,

in both statements, Wright said he had to take the gun away from Wilson once, then

hid it, gave it back, and then as he was leaving, had his back turned, he heard Wilson

cock the gun, and when he turned around, she had it raised to his face.  ECF Doc.

14-2 at 25.  The prosecutor went on to explain that he understood Wright did not

want to cooperate with the prosecution, but that his statements "very definitely

indicated that it was a deliberate act," "that it was not an act of self-defense and it

was not an act, could not have been an accidental shooting."  *Id.*

It may be that a different lawyer would have chosen to call Wright to the stand

despite his prior statements, but the habeas standards do not allow this Court to play

Monday-morning quarterback, where an attorney's decision is based on a strategic

decision.  *See Ellefson v. Hopkins*, 5 F.3d 1149, 1150 (8th Cir. 1993) ("we will not

second-guess strategic decisions").  Based on Hill's testimony, it is clear that Hill

considered evidence in the case, considered the pros and cons, and made the decision

he believed would result in the best outcome for his client.  This is an example of the type of "strategic choice[] made after thorough investigation of law and facts relevant to plausible options" that "are virtually unchallengeable" on federal habeas review.  *Nance*, 922 F.3d at1302; *Knowles v. Mirzayance*, 556 U.S. 111, 124 (2009). Wilson has not shown that her counsel's strategic choice was unreasonable; therefore, the state court's conclusion that counsel was not ineffective was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.  28 U.S.C. § 2254(d).

As an additional ground for denying Wilson's IATC claim, the undersigned finds that even if Wilson were able to show that Hill's decision was unreasonable (i.e., that no competent counsel would have made the same decision), her IATC claim would still fail under *Strickland*, because she cannot show she was prejudiced by Hill's failure to call Wright to the stand.  *Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding."  *Strickland*, 466 U.S. at 693. The petitioner must show a reasonable probability exists that, "but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694. Bare allegations that the petitioner was prejudiced by counsel's performance are not enough.  *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

Here, as set forth above, there were significant risks associated with calling Wright to the stand. Given Wright's omission from Wilson about his deposition, the fact that he did not stay at the trial, and the fact that his recollection of the events was different from that of Wilson's, the undersigned does not find a reasonable probability exists that Wright would have testified the shooting was an accident. And, even if he had testified the shooting was an accident, given his prior inconsistent statements and his status as a convicted felon, the undersigned does not find a reasonable probability exists that the jury would have believed Wright and would have returned a not guilty verdict. Thus, because Wilson cannot meet either the prejudice or performance prong of *Strickland*, she cannot obtain relief on this IATC claim.

## C.    Evidentiary hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). Additionally, this Court must take into account the deferential standards prescribed by § 2254, especially where an evidentiary hearing was held in state court, which is the case here. *See id.* Upon

consideration, the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 474.

## IV.   Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing Section 2254 Cases. If there is an objection to this recommendation by either party, that party may bring such argument to the

attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is ORDERED:

1.     The clerk shall change the docket to reflect that Mark S. Inch has been substituted as the respondent.

And, it is respectfully RECOMMENDED:

That Petitioner's petition under 28 U.S.C. § 2254 be DENIED without an evidentiary hearing; that a certificate of appealability be DENIED; and that the clerk close this matter.

At Pensacola, Florida, this 18th day of November, 2019.

*/s/ Hope Thai Cannon*

**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within 14 days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.</u>  A copy of objections shall be served upon the Magistrate Judge and all other parties. A party failing to object to a Magistrate Judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.